**Thelma FANNIE and Lavina Torockio et al., Plaintiffs,**

v.

**CHAMBERLAIN MANUFACTURING CORP., DERRY DIVISION, and Local 624 United Electrical, Radio and Machine Workers of America, et al., Defendants.**

Civ. A. No. 75–1402.

United States District Court, W. D. Pennsylvania.

Dec. 5, 1977.

voluntarily testifying and producing documents before the Grand Jury.

Bernard D. Marcus, Kaufman & Harris, Pittsburgh, Pa., Jane M. Picker, Cleveland, Ohio, for plaintiffs.

H. Woodruff Turner, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., Andrew S. Price, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., Sandra Reiter Kushner, Rothman, Gordon, Foreman & Groudine, Pittsburgh, Pa., for defendants.

## OPINION

TEITELBAUM, District Judge.

The case *sub judice* is an action for alleged sex-based employment discrimination. The plaintiffs were female employees of the defendant company and members of the defendant Local 624. They allege in a 41-page, six-count complaint that the defendant company, union and named individuals have operated under a policy and practice of discrimination against female employees on the basis of sex in regard to various terms and conditions of their employment.

Specifically, eleven employees of the Chamberlain Manufacturing Corporation allege that the corporation, various of its present and/or former supervisory employees, their unions, Local 624 and the United Electrical, Radio and Machine Workers of America, and various present and/or former union representatives and officers have violated their rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, *et seq.*; 29 U.S.C. Sec. 185; 42 U.S.C. Sec. 1981; and 42 U.S.C. Sec. 1985(3).

Counts One and Two of the complaint allege a historical and continuing pattern and practice of discrimination against female employees based upon their sex. The complaint specifically alleges discrimination in the plaintiffs' terms and conditions of employment, in job classifications and assignments, in the seniority system, in lay-

off and recall practices, in the negotiation, administration and enforcement of collective bargaining agreements, in the harassment and intimidation of female employees, and in the retaliation against those female employees who lodged charges of discrimination with government agencies and/or who filed prior complaints of sex discrimination against the defendants in Court. It is also alleged that a 1965–1967 Collective Bargaining Agreement entered into by the Local and International Union defendants and Keystone Alloys Company, predecessor in interest to Chamberlain Manufacturing Corporation, provided separate men's and women's job classifications and that all women's jobs paid less then all men's jobs. Additional allegations are that women were laid off out of line of seniority while men junior to them were permitted to work and while new male employees were hired, and that this practice occurred both before and after January 1, 1967, when Chamberlain Manufacturing Corporation assumed control of the plant in which the plaintiffs were working in Derry, Pennsylvania. The complaint further alleges that the plaintiffs were employees in the Window and Door Division of the Corporation's plant and that they held divisional seniority in that division. This division of the corporation was closed in 1969–1970 resulting in the lay-off of each of the plaintiffs, and the 1969–1972 Collective Bargaining Agreement in effect at the time of the closing required employees to forfeit their seniority in the Window and Door Division if they elected to transfer to the Siding Division, the corporation's only other division in the Derry Plant. The employees of the Window and Door Division are alleged to have been predominantly female, while the employees of the Siding Division were predominantly male. The seniority system and other provisions of the Collective Bargaining Agreements are alleged to have perpetuated the effects of past discrimination since female employees were locked into a division that was no longer operational. Counts One and Two also allege discriminatory practices to which the plaintiffs were subjected when they worked as junior employees in the Siding

Division after the closing of the Window and Door Division including harassment and intimidation, discriminatory job disqualification practices, and retaliatory practices. The plaintiffs also allege that after the closing of the Window and Door Division they were denied the opportunity of doing work to which their Window and Door Division seniority entitled them.

Count Three alleges violations by the corporation of contracts between the corporation and the unions in violation of 29 U.S.C. § 185. The plaintiffs in Count Three include the eleven plaintiffs named in Counts One and Two plus an additional employee. Count Three sets forth a clause present in all contracts from 1964 prohibiting discrimination on the basis of sex and plaintiff's allegation that the discriminatory acts earlier described in Counts One and Two are violations of the contract.

Count Four alleges that the Local and International Defendants violated their duty of fair representation in violation of 29 U.S.C. § 185. It additionally alleges that the defendant Local in 1971 and 1975 arbitrarily and discriminatorily refused to accept grievances and to process meritorious grievances of the plaintiffs. The defendant Unions are further alleged arbitrarily and discriminatorily to have failed to represent female employees fully in arbitration and to have negotiated, administered and enforced contracts with the company which discriminate against female employees on the basis of their sex.

Count Five alleges that the acts set forth in Counts One and Two and the additional individual claim of Count Three are violations of 42 U.S.C. § 1981.

Count Six alleges that the defendants and others presently unknown conspired to deprive the plaintiffs of their rights, privileges and immunities secured by 42 U.S.C. §§ 2000e, *et seq.*, 29 U.S.C. § 185, and 42 U.S.C. § 1981, and injured them in property or person and deprived them of equal protection of the laws and rights secured by these same statutes. The alleged discriminatory acts committed by one or more of the defendants in furtherance of the con-

spiracy include: the discriminatory practices described in other counts; negotiation of discriminatory provisions of collective bargaining agreements which were signed by all the individual defendants, except two who are alleged to have participated in the conspiracy by harassing female employees and by assigning them jobs and judging their qualifications to do such jobs in a discriminatory manner; and retaliation in violation of First Amendment rights against female employees who lodged charges of discrimination with government agencies and/or who filed prior complaints against the Company and Union defendants in court.

The relief sought in Counts One and Two includes declaratory and permanent injunctive relief; back pay; costs, including attorneys' fees; retention of jurisdiction of the case by the Court until it is assured that the activities complained of have been remedied; and such other relief as is necessary and appropriate. In Count Three the plaintiffs seek injunctive relief, compensatory damages for injuries suffered due to the execution of discriminatory provisions in the collective bargaining agreements and for the Corporation's breaches of contract. In Count Four, the plaintiffs seek injunctive relief, compensatory damages for the injuries suffered by them from the Unions' breaches of contract, and of their duty of fair representation; and costs, including attorneys' fees. In Counts Five and Six the relief sought is essentially the same as that sought in Counts One and Two, except that requests for compensatory and punitive damages are also included.

The issues presently to be decided on various motions by the parties are whether or not the instant case should be certified as a class action under Rule 23 of the Federal Rules of Civil Procedure, whether or not defendants' motion to dismiss should be granted and whether partial summary judgment with respect to Count Two of plaintiffs' amended complaint is appropriate.

## CLASS CERTIFICATION

Plaintiffs have moved this Court to certify the instant case as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure[1]. The class which plaintiffs seek to represent is defined as follows:

". . . [a]ll females who are or were employed by Chamberlain Manufacturing Corporation at its Derry Division, or by its predecessor in interest, Keystone Alloys Company, on July 2, 1965, or thereafter, and who are or during the course of their employment were, on the seniority list of the Window and Door Division."

There are initially four prerequisites which must be satisfied as a condition precedent to the maintenance of a class action under Rule 23(a).[2] For the reasons hereinafter stated, we deem the requirements of 23(a)(3) and 23(a)(4) to be unfulfilled in the case *sub judice.*

Plaintiffs have failed to prove that their claims are typical of the class they seek to represent, thereby failing to comply with Rule 23(a)(3). Plaintiffs' claims are not typical because former Window and Door employees can be classified into two distinct groups. The first group would be comprised of those former employees, like the nominal plaintiffs, who refused transfer over to the Siding Division after the closing of the Window and Door operations. The second group would be comprised of those former employees, unlike the nominal plaintiffs, who did in fact transfer to the Siding Division after the closing of the Window

---

1. The Court's position on the appropriateness of invoking Rule 23(b)(2) in a similar factual setting has been previously set forth in *Rodgers v. United States Steel Corporation*, 69 F.R.D. 382, 387 (W.D.Pa.1975).

2. *PREREQUISITES TO A CLASS ACTION.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

and Door operations. When those employees in the first group refused to transfer from the Window and Door Division to the Siding Division, employment opportunities were offered to other Window and Door employees, members of the second group, who had less Window and Door seniority than first group plaintiffs. Thereafter, the group one employees, including the nominal plaintiffs, were laid-off and recalled in accordance with their accumulated seniority in the Siding Division. Having refused transfer to the Siding Division, the employees in group one were treated as new employees with no seniority benefits with respect to lay-off and recall. In light of the foregoing facts, it is apparent that the nominal plaintiffs' claims are only typical of those Window and Door employees who refused transfer to the Siding Division. Their claims are not typical of the entire purported class which would include *all* females who were on the seniority list of the Window and Door Division since 1965.

 Additionally, typicality is lacking in the nature of discriminatory charges alleged in the instant suit. The complaint alleges as a basis for relief retaliation against those female employees who lodged charges of discrimination with government agencies and/or who filed prior complaints of sex discrimination against the defendants in court. These charges, while applicable to the nominal plaintiffs, are not typical of the purported class in its entirety.[3] The complaint further alleges that plaintiffs were subjected to discriminatory practices when they worked as junior employees in the Siding Division after the closing of the

Window and Door Division. The nature of these charges also varies depending upon whether or not the junior employee had accepted transfer to the Siding Division. For those who refused transfer to the Siding Division, that which is perceived as discriminatory treatment could merely be a result of adherence to the new Siding Division Seniority List. Thus, the nature of the claims set forth in plaintiffs' complaint reveals diversity rather than typicality, thereby requiring an individualized, factual analysis not conducive to broad class action treatment.[4] See *Ungar v. Dunkin Donuts of America, Inc.,* 531 F.2d 1211 (3d Cir. 1976). The aforementioned factual scenario is also sufficient to defeat the somewhat duplicative adequacy of representation requirement contained in Rule 23(a)(4). "Whether a party adequately represents a class depends on all the circumstance of the particular case." 3B, Moore, *Federal Practice,* ¶ 23.07[1] (2d Ed. 1974). Where the basis for relief is predicated upon differing individual situations to the extent existent in the instant suit, the nominal plaintiffs could not possibly be adequate representatives of the heterogeneous class as a whole. Thus, the requirement of Rule 23(a)(4) is also unfulfilled in the case *sub judice.*

 Regardless of whether the class deficiency is labelled under Rule 23(a)(3) or Rule 23(a)(4), the important principle to be recognized is that a class action would be an inappropriate vehicle for litigation of the claims alleged in the instant case. Accordingly, class certification will be denied for failure to satisfy the requirements of Rule 23(a)(3) and/or Rule 23(a)(4).[5]

---

**3.** Plaintiffs' Reply Memorandum at page two states that while all of the named plaintiffs in Count One filed charges with the EEOC, the purported class would include *all* persons employed by Chamberlain 300 days prior to October 30, 1972.

**4.** "An action, of course, is not maintainable as a class suit merely because it is designated as such in the pleadings; whether it is or is not depends upon the attending facts. Both logic and justice dictate that a party or parties who seek to bring an action on behalf of a class or against a class, or an action by a class against a class, must bring themselves within the re-

quirements of Rule 23." 3B, Moore, *Federal Practice,* ¶ 23.02–2 (2d Ed. 1974).

**5.** Plaintiffs had filed a motion to strike defendant Chamberlain Manufacturing Corporation's surrebuttal memorandum of law on the issue of class certification and defendant Francis J. Kommelter's counter affidavit for the reason that such papers were not authorized either by the Federal Rules of Civil Procedure or this Court. In the alternative plaintiffs' requested that we consider certain documents submitted in response to the surrebuttal memorandum of law and counter affidavit. In light of the fact that plaintiffs had an opportunity to submit a

## MOTION TO DISMISS

Defendant Chamberlain Manufacturing Corporation and defendants United Electrical, Radio and Machine Workers of America, and Local 624, United Electrical, Radio and Machine Workers of America have asserted numerous reasons why plaintiffs' complaint should be dismissed. For the sake of clarity, we will undertake a seriatim review of the objections to each individual Count of the Six Count Amended Complaint.

### "Count One"

The first barrier erected by the defendants in an effort to dismiss Count One is the doctrine of res judicata.[6] "[U]nder the doctrine of res judicata, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). The prior judgments which defendants assert as a bar to the maintenance of the instant litigation will hereinafter be referred to as *Torockio # 1* and *Torockio # 2*. *Torockio, et al. v. Chamberlain Manufacturing Corporation, et al.*, 328 F.Supp. 578 (W.D.Pa.1971), *remanded*, 456 F.2d 1084 (3d Cir. 1972), *on remand* 56 F.R.D. 82 (W.D.Pa.1972), *aff'd.* 474 F.2d 1340 (3d Cir. 1973) (*Torockio # 1*); *Torockio, et al. v. Chamberlain Manufacturing Corporation, et al.*, Civ. No. 72–244 (W.D. Pa.1973) (*Torockio # 2*).

*Torockio # 1* was also an action instituted against the same defendants named herein based on alleged sex discrimination. This Court held in *Torockio # 1* that the

filing of a charge with the Equal Employment Opportunity Commission (hereinafter EEOC) within 90 days of the occurrence of the alleged unlawful employment practice and the filing of a civil action within 30 days of the issuance of a Right to Sue letter were both jurisdictional preconditions to the commencement of an action under Title VII. Having concluded that none of the ten (10) named plaintiffs had complied with the jurisdictional prerequisite of filing suit within 30 days of the issuance of a Right to Sue letter, it was ordered that the action be dismissed without prejudice to the plaintiffs.[7]

In *Torockio # 2*, the plaintiffs, all of whom were or had been employees of the defendant, Chamberlain Manufacturing Corporation alleged that (1) pursuant to the terms of a collective bargaining agreement between them, the defendants established a promotional and seniority system the intent and effect of which was to discriminate against the plaintiffs on the basis of their female sex; (2) the defendant unions breached their duty of fair representation in that they arbitrarily failed to process grievances entered by the plaintiffs; and (3) defendant Chamberlain violated the collective bargaining agreement in that it did not honor plaintiffs' seniority rights in its laying off and recall practices. This Court dismissed the first count of *Torockio # 2* based upon *Torockio # 1* in that no plaintiff had yet presented a timely right to sue letter.[8] Counts Two and Three in *Torockio # 2* were dismissed because of the failure to aver that plaintiffs had either exhausted or attempted to exhaust any available internal union remedies.

---

response to the defendant's unsolicited papers, we have considered both defendant's materials and plaintiffs' notes in reply. The interests of justice would appear to be best served by such a resolution under these circumstances.

**6.** In its brief defendant Chamberlain Manufacturing Corporation has also asserted as a bar the doctrine of direct estoppel. This doctrine is more popularly known as collateral estoppel. See 1B, Moore, *Federal Practice*, ¶ 0.405[1] (2d Ed. 1974). Due to the nature of the legal issues actually decided in *Torockio # 1* and *Torockio*

# 2 collateral estoppel cannot be the basis for a motion to dismiss the case *sub judice*.

**7.** "In the context of these jurisdictional questions, we treat the defendant's motion more properly as one to dismiss and hereby dismiss the action, without prejudice to the plaintiffs." *Torockio # 1, supra*, at 580.

**8.** The Opinion in *Torockio # 2* uses the phrase "*res judicata*" in its generic sense. See 1B, Moore, *Federal Practice*, ¶ 0.405[1] (2d Ed. 1974).

Having set forth the holdings in both *Torockio # 1* and *Torockio # 2*, it is apparent that they do not raise *res judicata* implications for the case *sub judice*. *Res judicata* requires for its application a final judgment "on the merits." A dismissal without prejudice, as in *Torockio # 1*, does not determine the merits. *American Heritage Life Insurance Co. v. Heritage Life Insurance Co.*, 494 F.2d 3 (5th Cir. 1974); *Sack v. Low*, 478 F.2d 360 (2d Cir. 1973). Additionally, it was the intention of this Court that *Torockio # 1* not bar subsequent litigation. In fact, the petition for reconsideration, review and reinstatement of the complaint in *Torockio # 1* was denied "because the Order of June 8, 1971 had dismissed the action 'without prejudice,' and therefore, the plaintiffs were free to refile the action if it were subsequently caused to be made jurisdictionally acceptable." 56 F.R.D. at 84.

Count One of *Torockio # 2* was therefore barred by *res judicata* only in the sense that the same jurisdictional deficiencies of *Torockio # 1* continued to exist. Having alleged in the instant suit that plaintiffs have filed timely charges with the EEOC and that this action was commenced within ninety (90) days of the receipt of right to sue notices,[9] the jurisdictional deficiencies of *Torockio # 1* and *Torockio # 2* have been cured, thus enabling Count One *sub judice* to proceed unfettered by the restraint of *res judicata.*

Defendants next assail Count One alleging that the time period and scope of its allegations go beyond those made in the EEOC charges. Section 706(e) of Title VII provides:

"A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge . . . shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved *within three hundred days after the alleged unlawful employment practice occurred*, or within thirty days after receiving notice that the state or local agency has terminated the proceedings under the state or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the state or local agency." (emphasis added)

For an EEOC charge to be timely filed in Pennsylvania, it must be filed within three hundred (300) days of the alleged unlawful employment practice.[10] The case *sub judice* is based upon EEOC charges filed on October 30, 1972 resulting in the alleged issuance of right to sue letters in October and November of 1975. Therefore, in Pennsylvania, only those alleged unlawful employment practices that occurred on or after January 2, 1972 (300 days before October 30, 1972) could have been the basis for the October 30, 1972 EEOC charges. Since plaintiffs' allegations cover events prior to January 2, 1972, defendants argue that plaintiffs are improperly attempting to expand the scope of this action. *McDonnell-Douglass Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Collins v. United Airlines*, 514 F.2d 594 (9th Cir. 1975); *Jenkins v. Blue Cross Mutual Hospital*, 522 F.2d 1235 (7th Cir. 1975); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496 (5th Cir. 1968). We agree with defendants that inasmuch as transactions and events occurring before January 2, 1972 could not have timely provided a basis for EEOC charges in October of 1972, such events must not be allowed to become part of a civil complaint filed in October of 1975.

Defendants' argument, however, overlooks Section 706(g) of Title VII which provides in relevant part:

---

**9.** Plaintiffs' Amended Complaint, p. 18–19.

**10.** 43 P.S. § 962.

"Back pay liability shall not accrue for a date more than two years prior to the filing of a charge with the Commission." Thus, plaintiffs may recover back pay for discrimination occurring more than three hundred (300) days before the filing of EEOC charges up to a two-year time limit. Whether or not such a two-year restriction is also applicable to injunctive relief need not be decided because plaintiffs' request for injunctive relief is no longer appropriate in view of defendant Chamberlain Manufacturing Corporation having ceased operations.

Accordingly, Count One shall be dismissed only as to events which transpired prior to October 30, 1970. We have considered defendants' other contentions and find them to be without merit.

### "Count Two"

 The first attack upon Count Two is predicated on the jurisdictional prerequisites previously discussed in conjunction with Count One. Specifically defendants contend that neither named plaintiff in Count Two, Mary Mehalic or Helen Miller, possesses a valid right to sue letter authorizing the present suit. However, plaintiffs' amended complaint alleges that Mary Mehalic received a right to sue letter on or about October 24, 1975 and that Helen Miller received a right to sue letter on or about December 11, 1975.[11] On a motion to dismiss, the allegations of the complaint must be accepted as true. 2A, Moore, *Federal Practice,* ¶ 12.08 (2d Ed. 1974). It is therefore inappropriate to challenge the validity of any 1975 right to sue letters in the present procedural posture where defendants' jurisdictional contentions are unsubstantiated. Plaintiffs' allegations are sufficient to survive a motion to dismiss.

 Defendants additionally contend that Count Two is barred by the equitable

11. Plaintiffs' Amended Complaint, p. 23.

12. Count Two is also subject to the limitation imposed upon Count One that only events occurring within two years of the filing of EEOC charges can be considered as a basis for the

doctrine of laches. Inexcusable delay and prejudice to the defendant are elements of laches. Both the length of delay and the existence of prejudice are questions of fact. *Churma v. United States Steel Corp.,* 514 F.2d 589 (3d Cir. 1975). Ruling on laches at this juncture of the suit is, therefore, premature.

Count Two was also attacked on the grounds of *res judicata.* For the reasons stated in connection with Count One, we deem Count Two to be maintainable despite *Torockio # 1* and *Torockio # 2.*

Accordingly, defendants' motion to dismiss Count Two must be denied.[12]

### "Count Three"

 Defendant initially argues for the dismissal of Count Three alleging that nowhere in the amended complaint do plaintiffs claim that defendant Chamberlain Manufacturing Corp. has violated any specific provision or term of the collective bargaining agreement. Therefore, it is contended that plaintiffs have failed to state a claim upon which relief may be granted under § 301 of the Labor Management Relations Act. However, plaintiffs have alleged breach of the following contractual provision by defendant Chamberlain Manufacturing Corp.:

"*Article II. No Discrimination*

*Section 1.* There shall be no discrimination against employees during and after their trial period of employment because of UE membership or activities, color, race, sex, marital status, age, religious or political beliefs."

Under the liberal notice pleading requirements of the Federal Rules of Civil Procedure, plaintiffs' complaint is sufficiently definite to state a claim upon which relief may be granted.

Plaintiffs' amended complaint also cures the pleading deficiency of the § 301 count

instant suit. Presumably, this restriction is less meaningful in Count Two than in Count One because the plaintiffs named in Count Two filed their charges of discrimination with the EEOC back in 1967 and 1968.

in *Torockio # 2.* It was held in *Torockio # 2* that:

"Here, the complaint is devoid of averments with respect to whether or not the plaintiffs have either exhausted or attempted to exhaust any available internal union remedies. Consequently, this action, insofar as it seeks relief as against the unions, is not maintainable. And additionally, since the maintainability of the action insofar as it seeks relief against Chamberlain is dependent upon the action as against the unions, it follows that the whole action is one over which this court has no jurisdiction until any internal remedies available to the plaintiffs have been exhausted."

Plaintiffs' amended complaint in the case *sub judice* now alleges that they have either exhausted or attempted to exhaust their available internal union remedies.[13] Therefore, under the reasoning previously discussed in connection with Count One, *Torockio # 2* does not bar litigation of Count Three in the instant suit.

▮▮▮ Lastly, defendants contend that Count Three is barred by the doctrine of *res judicata,* not because of *Torockio # 1* and *Torockio # 2,* but as a result of an arbitration decision rendered on January 17, 1973 denying the named plaintiffs' grievances that the employer had violated the collective bargaining agreement. However, in Count Four plaintiffs have also asserted a breach of the duty of fair representation against the defendant unions. An arbitration decision is not binding on employees where the union has breached its duty of

fair representation. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). To determine the *res judicata* effects of the aforementioned arbitration decision · prior to a ruling on the merits of the alleged breach of the unions' duty of fair representation would be improper. A motion to dismiss is not an appropriate vehicle to dispose of Count Three in light of the allegations contained in Count Four.[14]

Accordingly, defendants' motion to dismiss Count Three must be denied.

### *"Count Four"*

▮▮▮ The Union defendants allege that plaintiffs have failed to state specific facts in support of their Count Four fair representation claim. Having reviewed plaintiffs' amended complaint, this Court is of the belief that the broad notice pleading requirements of the Federal Rules of Civil Procedure have been satisfied.[15] Plaintiffs are not required to plead evidence.

▮▮▮ The Union defendants also contend that the two year tort statute of limitations bars relief under Count Four. The appropriate limitations period to be applied in an action for breach of the duty of fair representation has been the subject of considerable controversy.[16] Some Courts have found the shorter tort statute to best effectuate the underlying policies of federal labor law. *Read v. Local Lodge 1284, International Association of Machinists and Aerospace Workers, AFL–CIO,* 528 F.2d 823

---

**13.** Plaintiffs' Amended Complaint, p. 27.

**14.** Defendant Chamberlain Manufacturing Corp.'s reply brief at page 13 states: "Plaintiffs at page 20 of their brief claim that they are not bound by an arbitration decision where the union has breached its duty of representation. However, Professor Cooley's January 17, 1973 decision indicates that the individual grievants personally appeared before him and were fully heard. Thus, since the individual grievants participated and were heard by the arbitrator they cannot now claim that the union did not represent their interests." Defendant cannot seriously contend that mere physical presence of the grievants at the hearing is an adequate substitute for the zealous professional repre-

sentation which unions are supposed to afford. The fact that the grievants appeared and were heard at the hearing does not atone for the unions' breach of their duty of fair representation, if indeed there was such a breach.

**15.** See Plaintiffs' Amended Complaint, pp. 30–32.

**16.** Where the federal cause of action is silent as to the applicable limitations period, the appropriate state statute of limitations is to be followed. *International Union, United Automobile, Aerospace and Agricultural Implement Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

(3d Cir. 1975); *De Arroyo v. Sindicato De Trabajadores Packinghouse, AFL–CIO,* 425 F.2d 281 (1st Cir. 1970). *Read* held that Delaware's two-year statute of limitations applied where the underlying claim was for personal injuries even though the form of the action was an alleged breach of the unions' duty of fair representation. However, in the case, *sub judice* we choose to apply the six year contract statute of limitations. See *Falsetti v. Local Union No. 2026, UMW,* 355 F.2d 658 (3d Cir. 1966); *Butler v. Local Union 823, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 514 F.2d 442 (8th Cir. 1975); *Tuma v. American Can Company,* 367 F.Supp. 1178 (D.N.J.1973).

As in *Read, supra,* where the underlying claim was for personal injury, it is important to ascertain the underlying basis of plaintiffs' claims in the instant suit. Count Four, *inter alia,* alleges that the defendant unions negotiated, administered and enforced contracts with the defendant company which discriminated against females. These claims clearly sound in contract because they revolve around the labor agreements negotiated by the defendant company and unions. Accordingly, Count Four is not barred by the two year tort statute of limitations but rather is subject to the six year contract limitation period.[17]

### *"Count Five"*

■ Count Five alleges the claims of sex discrimination previously discussed to be violations of 42 U.S.C. § 1981. However, it has been uniformly held that 42 U.S.C. § 1981 provides no remedy for sex discrimination. *Jackson v. University of Pittsburgh,* 405 F.Supp. 607 (W.D.Pa.1975); *McIntosh v. Garofalo,* 367 F.Supp. 501 (W.D.Pa.1973); *Weyandt v. Mason's Stores,* 279 F.Supp. 283 (W.D.Pa.1968). Having alleged only sex discrimination, Count V of plaintiffs' amended complaint must be dismissed.

17. Defendants' contentions regarding *res judicata* vis a vis Count Four are without merit for

### *"Count Six"*

■ Count Six of plaintiffs' amended complaint alleges a conspiracy in violation of 42 U.S.C. § 1985(3). Defendants contend· that the conspiracy claim should be dismissed because § 1985(3) does not create a cause of action against purely private employment conduct and in any event females are not members of the class statutorily protected by § 1985(3). However, both of defendants' propositions have been definitively rejected. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Pendrell v. Chatham College,* 386 F.Supp. 341 (W.D.Pa.1974). Conspiracies by private parties resulting in sex discrimination are actionable under § 1985(3).

■ Additionally, Count Six is not barred by the applicable statute of limitations. As in Count Four, the appropriate statute of limitations to be applied is that which would be applicable in a similar state court action. While there is authority for the view that application of a two year tort statute of limitations would be acceptable, *Davis v. United States Steel Supply, Division of United States Steel Corporation,* 405 F.Supp. 394 (W.D.Pa.1976); *Wilson v. Sharon Steel Corporation,* 399 F.Supp. 403 (W.D. Pa.1975), we believe that a six year limitation period is warranted by Pennsylvania law. Under state law the statutory period of limitations upon an action to recover damages for an alleged conspiracy to damage plaintiff's business and otherwise injure him is six years. 22 *P.L.E.,* Limitation of Actions, § 31. The above-mentioned six year state conspiracy limitation period is therefore the yardstick which should be applied in a federal action under § 1985(3). See *Wilson v. Sharon Steel Corporation,* 549 F.2d 276, 280 (3d Cir. 1977).

### CONCLUSION

To summarize, Count One is dismissed as to all allegations based upon events occurring prior to October 30, 1970. Count Five is dismissed in its entirety. Dismissal with

the same reasons stated in the discussion of Count Three.

respect to Counts Two, Three, Four and Six is denied.

## PARTIAL SUMMARY JUDGMENT

Having failed in its effort to dismiss Count Two through their motion to dismiss, defendants now marshal to their support certain exhibits and deposition testimony which they claim makes entry of summary judgment under Rule 56 appropriate. For the reasons hereinafter stated, Count Two of the instant action should be dismissed as to plaintiff Mehalic only.

Defendant Chamberlain Manufacturing Corporation urges that this Court lacks subject matter jurisdiction over Count Two. While we rejected defendant's identical contention in connection with its previous motion to dismiss Count Two,[18] certain additional evidence now brought to our attention via exhibits and deposition testimony in conjunction with defendant's partial summary judgment motion warrants dismissal of Count Two as to plaintiff Mehalic's claim.[19]

Plaintiff Mehalic filed two separate charges with the EEOC, one in 1967 and the other in 1968. On January 2, 1970, the EEOC issued a single notice of right to sue. Subsequently, on February 3, 1970, plaintiff and her attorney were notified by the EEOC that the two charges had been consolidated into one case.[20] A second notice of right to sue was issued in October of 1975 to plaintiff Mehalic. Due to confusion regarding whether or not there was one consolidated charge or two separate charges the second notice of right to sue was issued. The EEOC felt that in those situations in which there is any question regarding whether or not a notice of right to sue should be issued, the Commission should issue such a letter and let the Federal District Court render a decision.[21]

Accepting the EEOC's invitation to decide the validity of plaintiff Mehalic's 1975 notice of right to sue letter, this Court is of the belief that the aforementioned letter is legally inoperative because the Commission had already issued a notice of right to sue in 1970 which, after consolidation, was intended to provide a jurisdictional basis for both the 1967 and 1968 charges. Thus, the EEOC lacked authority in 1975 to reinstitute time barred charges. The issuance of duplicative notices by the EEOC cannot substitute for compliance with the Congressionally prescribed limitation period. *Cleveland v. Douglas Aircraft Co.,* 509 F.2d 1027 (9th Cir. 1975).

Having decided that Count Two is properly dismissable against plaintiff Mehalic, the issue arises whether or not summary judgment is the proper vehicle to effectuate disposal of such claim. Summary judgment under Rule 56 initially appears appropriate due to the fact that matters outside the pleadings have been necessary to conclude that this Court lacks subject matter jurisdiction. However, it has been decided that it is error to rule on a summary judgment motion where a court determines that it lacks jurisdiction over the subject matter. *O'Donnell v. Wien Air Alaska, Inc.,* 551 F.2d 1141 (9 Cir. 1977). The proper procedure to be utilized is outlined by the Third Circuit in *Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 891 (3d Cir. 1977);

> "At the outset we must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards to the plaintiff: The court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here

---

**18.** See previous discussion of defendant's motion to dismiss at p. 11.

**19.** Exhibits A through D attached to defendant's partial summary judgment motion and Eugene Nelson's deposition.

**20.** See Exhibits B and C attached to partial summary judgment motion.

**21.** See Exhibits A and D attached to partial summary judgment motion.

the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."

*Mortensen* is therefore authority for the proposition that matters outside the pleadings may be evaluated in reaching a decision on whether or not a motion to dismiss based on lack of subject matter jurisdiction should be granted. "[A] motion for summary judgment for lack of jurisdiction over the subject matter may be treated and disposed of as a motion to dismiss." 6, Moore, *Federal Practice*, ¶ 56.03 (2d Ed. 1974). Accordingly, defendant's partial summary judgment motion as to plaintiff Mehalic will be treated as a motion to dismiss and Mehalic's claim under Count Two will thereby be dismissed.

Treating defendant's subject matter jurisdiction objection to plaintiff Miller's claim in Count Two as a motion to dismiss, said motion must be denied. There has been a direct factual conflict as to whether or not a notice of right to sue letter was forwarded to plaintiff Miller in 1975 and whether or not she received a notice of right to sue in 1970.[22] Such a dispute is more properly resolvable at trial rather than by reference to conflicting depositions and exhibits.[23] Additionally, defendant has contended that Count Two be entirely dismissed under the doctrine of laches.[24] In support of its position, defendant Chamberlain has submitted an affidavit executed by Francis J. Kommelter, Vice President of Industrial Relations, delineating specific areas of prejudice arising as a result of plaintiffs' delay in instituting suit. In response, plaintiffs have requested a continuance pursuant to Rule 56(f) of the Fed-

eral Rules of Civil Procedure in order to depose Kommelter. It appears that whether or not a factual dispute exists as to those events which form the basis of the instant laches contention must await plaintiffs being afforded an equal opportunity to depose Kommelter. Accordingly, a one-month continuance will be granted for the purpose of enabling plaintiffs to depose Kommelter on the issue of laches as it relates to the remaining plaintiff in Count Two, Helen Miller.

Plaintiffs have also filed a motion to strike certain exhibits and affidavits attached to defendant's motion and memorandum of law in support of summary judgment. In turn, defendant has requested reimbursement for costs and counsel fees expended in opposing the aforementioned motion. We have considered the parties' respective contentions and find them to be without merit.

In summary, plaintiff Mehalic's claim in Count Two is dismissed. Plaintiff Miller's claim in Count Two remains viable subject to proof at trial of the requisite jurisdictional basis and subject to future survival of said claim in the face of defendant's continuing laches objection. Decision on the question of laches with respect to Count Two is reserved until completion of Kommelter's deposition by plaintiffs within one month. Lastly, plaintiffs' motion to strike certain exhibits and affidavits is denied.

---

**22.** See plaintiffs' amended complaint, p. 23; Exhibit A attached to defendant's partial summary judgment motion; Miller deposition, p. 151.

**23.** "[W]here a factual issue arises in connection with a jurisdictional or related type of

motion, . . . the court has a broad discretion as to the method to be used in resolving the factual dispute." 6, Moore, Federal Practice, ¶ 56.03 (2d Ed. 1974).

**24.** See previous discussion on the nature of laches at p. 11.