James MOSES, Individually and on behalf of all others similarly situated, Plaintiffs,

Ellen R. Upchurch, Intervening Plaintiff,

v.

AVCO CORPORATION, AVCO LYCOMING DIVISION, Defendant.

Civ. A. No. B–75–134.

United States District Court, D. Connecticut.

Dec. 15, 1982.

Brenda C. Morrissey, Lucy V. Katz, Koskoff, Koskoff & Bieder, Bridgeport, Conn., for plaintiffs.

Edward M. Sheehy, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., Don A. Banta, J. Kevin Hennessy, Naphin, Banta & Cox, Chicago, Ill., for defendant.

## RULING ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

ZAMPANO, District Judge.

In this suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981, the plaintiffs seek individual and broad class-wide relief from alleged employment discrimination policies and practices of the defendant, Avco Corporation, Lycoming Division ("Avco"). Presently before the Court is plaintiffs' motion, filed five years after the institution of this case, for an order certifying the action as a class action.

### I

The named plaintiff, James E. Moses, a black male, was employed by Avco as a stockman in 1965. He received several promotions and, in June 1968, he was elevated to the foreman's job in the Research and Development Department, a supervisory, non-union position. Thereafter, he claims, he was denied further promotions and was subjected to a pattern of continuing acts of discrimination by the defendant which included unfair shift transfers, a lower salary than whites, a poor annual "performance review" by his supervisor, demotions without due cause, and failure to maintain educational achievements in his personnel file.

He also asserts he was demoted in August 1974, and laid off in February 1975, in retaliation for filing written charges against the defendant with the Equal Employment Opportunity Commission ("EEOC") in February 1974. Before the EEOC, the plaintiff stated he was aggrieved because he was denied promotions and salary increments on the basis of race.[1] Finally, he submits that the defendant is engaged in discrimination against blacks and other minorities "in initial employment, job assignments and promotion to supervisory, managerial and professional positions."

Mr. Moses was rehired in 1978 as a routing coordinator and was later promoted to a level 3 project coordinator, a position in a non-bargaining unit with exempt salary status.

The named plaintiff, Ellen Upchurch, is a black woman who first worked for Avco as a grinder in January 1974. Two months later she was laid off and then rehired in September 1974. She contends that during the lay off period she should have been given the opportunity, as were other persons with less seniority, to work in the lower job classification of a drill press operator. In December 1974, the plaintiff filed charges of discrimination in lay off procedures with the EEOC. On April 18, 1975, she was again laid off, but recalled for a five day trial period within which to qualify as a drill press operator. Later, she was notified she had failed the test and was laid off. She alleges that her disqualification was retaliatory in nature, and, on May 9, 1975, she filed a second charge with the EEOC. On July 3, 1975, she received a right to sue letter. Subsequently, she was rehired in 1977 and is presently employed by the defendant.

As a consequence of the defendant's acts, the plaintiffs request an injunction, back pay, compensatory damages, and attorneys fees.

### II

In their amended complaint, the plaintiffs define the class involved in this lawsuit

---

1. The EEOC issued a right to sue letter on April 8, 1975.

as "those blacks and other minority group members who have applied for employment with, or are employed by the defendant, and who have been denied employment or promotion because of their race, sex or national origin." In subsequent moving papers, the plaintiffs propose two subclasses. The first, represented by Mr. Moses, would consist of all "black and hispanic persons who have been employed at Avco . . . since January 1, 1968."; the second, represented by Ms. Upchurch, would be composed of all "females who have been employed at Avco . . . since January 1, 1968."

The defendant opposes certification on numerous grounds. First, it essentially argues that the plaintiffs' across-the-board class action concept is inappropriate for this case and, second, that the plaintiffs have individualized unique claims which are unsuitable for class treatment. The plaintiffs, however, contend that the defendant is engaged in broad-based acts of discrimination common to all class members and that, despite variations in fact patterns of injury, they can adequately represent all the members of the subclasses to redress the alleged wrongs.

### III

■ In order to prevail on their application for class action certification, the plaintiffs have the burden to establish that the following four prerequisites of Rule 23(a) have been satisfied: 1) numerosity, 2) commonality, 3) typicality, and 4) representativeness. *DeMarco v. Edens,* 390 F.2d 836, 845 (2 Cir.1968); *Grant v. Morgan Guar. Trust Co. of New York,* 548 F.Supp. 1189, 1192 (S.D.N.Y.1982); *Wilder v. Bernstein,* 499 F.Supp. 980, 992 (S.D.N.Y.1980). In addition, the class action must meet at least one of the conditions set forth in Rule 23(b).

### A) NUMEROSITY

Plaintiffs statistical data reveals that the proposed subclasses would consist of 1,046 minority and 1,743 female employees, with approximately an 18% overlap between the groups. These figures, however, do not offer an accurate tally of the proposed class

members who may properly be included. The applicable statutes of limitations for Title VII and § 1981 actions reduce significantly the numbers of employees in the two subclasses.

■ As to a Title VII action, it is clear that the class may include only those persons who had viable claims at the time the class representative filed a charge with the EEOC. See, e.g., *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 472–73 (D.C.Cir. 1976), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1977); *Gill v. Monroe County Dep't of Social Services,* 79 F.R.D. 316, 331 (W.D.N.Y.1978). Under 42 U.S.C. § 2000e–5(e), a charge must be filed with the EEOC within 180 days after the unlawful employment practice, unless the complainant has instituted proceedings with a state or local agency within 300 days of the discriminatory act. Thus, only those employees who worked at Avco after mid-August 1973, and suffered discrimination, may be included in either subclass.

The limitations period for a § 1981 action is three years. Conn.Gen.Stat. § 52–577; *Williams v. Walsh,* 558 F.2d 667, 670–73 (2 Cir.1977). In the instant case, the complaint was filed on April 22, 1975. As a result, those who left the company's employ before that date are not eligible for inclusion in either subclass with respect to the § 1981 claim. Moreover, any act of discrimination occurring before April 22, 1972, cannot provide a basis for relief under the statute. See, e.g., *Gill,* 79 F.R.D. at 333.

These time limits are significant in view of Avco's workforce reductions. Although the Court does not have complete statistics for the years 1973–1975, the figures submitted for the years 1968, 1970, 1972, 1976, and 1977 reveal steady and dramatic decreases in the employment rolls over the years. Based on the available data, one may presume that the proposed subclasses would consist of several hundred members each, rather than several thousand as claimed by the plaintiffs.

However, in the absence of precise employment figures for several relevant years,

and because the defendant has not focused its objections to certification on the numerosity criterion, the Court will assume that this jurisdictional prerequisite has been satisfied.

## B) COMMONALITY

The parties have addressed the issue of commonality within the framework of the applicability of the "across-the-board" theory of discrimination. The plaintiffs, in effect, argue that, because they allege "a broad-based policy of sex, race and national origin discrimination" which is "company-wide," an *a fortiori* across-the-board approach is the correct one to determine commonality. See, e.g., *Payne v. Travenol Laboratories, Inc.,* 565 F.2d 895, 900 (5 Cir.), cert. denied, 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978); *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5 Cir.1969); *Rosario v. New York Times Co.,* 84 F.R.D. 626, 629–30 (S.D.N.Y.1979). The defendant, however, urges the Court to adopt the reasoning of several cases in this District which, on facts similar in many respects to those in the case *sub judice,* have rejected the across-the-board concept. See, e.g., *Fernandez v. Avco Corp.,* 14 FEP Cases 1004, 1006 (D.Conn.1977); *Hyatt v. United Aircraft Corp., Sikorsky Aircraft Div.,* 50 F.R.D. 242, 248 (D.Conn.1970).

While it is true that the across-the-board attack on unequal employment practices has had less than a warm reception in this District, the Supreme Court has acknowledged the validity of the concept, noting "that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs," and that "[c]ommon questions of law or fact are typically present." *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977). However, the Supreme Court has cautioned that "careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonetheless indispensable." *Id.* Moreover, in its most recent pronouncements on the question, the Supreme Court affirmed the value of the across-the-board rule in racial discrimina-

tion cases. *General Tel. Co. v. Falcon,* 457 U.S. 147, 157, 102 S.Ct. 2364, 2371, 72 L.Ed.2d 740 (1982). But, again, the Court counseled that a guarded use of the class action device was essential because "[c]onditionally, there is a wide gap between (a) and individual's claim [of discrimination], and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims."

In the instant case, the plaintiffs have submitted compilations of minority employment data for EEOC job classifications at AVCO. By way of affidavit, they allege specific discriminatory practices with reference to hiring, promotions, terminations, seniority, layoffs, recalls, job placements, and transfers. These allegations are sufficient, albeit barely at this stage of the proceedings, for the Court to find there are at least some questions of law and fact common to the named plaintiffs and the members of the subclasses.

## C) TYPICALITY AND REPRESENTATIVENESS

For our purposes, a discussion of typicality and adequacy of representation may be combined.

It is settled law that a class representative must possess the same interest and suffer the same injury as the putative class members. See, e.g., *East Texas Motor Freight System,* 431 U.S. at 403, 97 S.Ct. at 1896. In other words, the proper measure of typicality is the particular nature of the discrimination, and not merely the class characteristic on which it is based. This blending of interests and claims is vitally important because, among other consequences, rulings and judgments in the case will have a *res judicata* effect on other class members.

In the case at bar, the claims of Mr. Moses and Ms. Upchurch are patently atypical of the subclasses they seek to represent. The pleadings and moving papers demonstrate little, if any, nexus between the plaintiffs' interests and contentions and those of the members of the subclasses. One of the salient aspects of the plaintiffs' case is that Avco demoted and laid them off in retaliation for filing EEOC charges. Plaintiffs, however, neither identify any other minority employee who claims retaliatory demotion and layoff, nor assert that retaliation resembles the complaints of most of the members of the proposed classes. Thus, the nature of plaintiffs' accusations against Avco reveals diversity rather than typicality, requiring individualized evidence not appropriate for class action treatment. See *General Tel. Co.*, 457 U.S. at 157, 102 S.Ct. at 2371; *Grant*, 548 F.Supp. at 1193; *Fernandez*, 14 FEP Cases at 1007; *Fannie v. Chamberlain Mfg. Corp., Derry Div.*, 445 F.Supp. 65, 72 (W.D.Pa. 1977); *Johnson v. Fulton Sylphon Div.*, 439 F.Supp. 658 (E.D.Tenn.1976); *Odom v. U.S. Homes Corp. of Texas*, 76 F.R.D. 381, 383 (S.D.Texas 1975).

Significant dissimilarities also exist in several other respects. Plaintiffs seek to represent both union and non-union Avco employees. The attack based on seniority for layoff and recall will necessarily involve the collective bargaining agreement then existing between Avco and the union. Mr. Moses was not a union member during the critical years involved in his claims. Ms. Upchurch, by comparison, apparently has been a member of the union during her employment at the company. Thus, Mr. Moses is not representative of the local union's minority members, and Ms. Upchurch is not representative of the members of her class who are not union members. Inherent problems exist with combining union and non-union employees within one class. See, e.g., *Wells v. Ramsey, Scarlett & Co.*, 506 F.2d 436, 437–38 (5 Cir.1976); *Robbins v. O'Brien Corp.*, 14 FEP Cases 934, 935–36 (N.D.Cal.1977); *Parker v. Kroger*, 14 FEP Cases 75, 81–82 (N.D.Ga.1976).

Moreover, the plaintiffs' classes encompass the entire spectrum of job categories at Avco, ranging from managers and professionals to unskilled labor. It is questionable under plaintiffs' showing that each subclass, which include all these groups, is sufficiently homogeneous and free of conflicts to merit certification. See, e.g., *Droughn v. FMC Corp.*, 74 F.R.D. 639 (E.D. Pa.1977); *Davis v. Roadway Express*, 16 FEP Cases 1706, 1708 (S.D.Tex.1975). Finally, the Court doubts whether Mr. Moses can fairly represent all hispanics, see, e.g., *Jones v. PAC Intermountain Express*, 16 FEP Cases 359, 361 (N.D.Cal.1977); *Bachman v. Collier*, 18 FEP Cases 768, 770 (D.D. C.1976), and whether Ms. Upchurch, a black female, can adequately represent a subclass of women, including those who inevitably would be competing with the subclass of minority employees.

For the foregoing reasons, the motion for class certification is denied.