Irvin **GILL et al., Plaintiffs,**

v.

**MONROE COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Defendants.**

**Civ–75–520.**

United States District Court,
W. D. New York.

June 19, 1978.

Emmelyn Logan-Baldwin, Rochester, N. Y., for plaintiffs.

Frank P. Celona, Rochester, N. Y., for defendants Monroe County Department of Social Services and James Reed.

William J. Stevens, County Atty., Rochester, N. Y. (Joseph C. Pilato, Rochester, N. Y., of counsel), for defendants Monroe County Civil Service Commission, Fred Lapple, Gabriel Russo and Monroe County.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City (Douglas S. Cream, Buffalo, N. Y., of counsel), for defendants New York State Department of Social Services, Phillip L. Toia, New York State Department of Civil Service and Ersa H. Poston.

CURTIN, Chief Judge.

The plaintiffs in this case are thirty-six past, present, and potential employees of the Monroe County Department of Social Services [the Department]. The complaint, which requests class certification, alleges employment discrimination on the basis of race, sex, and national origin, and seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, and the fourteenth amendment. The facts of the various plaintiffs' claims vary considerably, not only as to the alleged acts of discrimination but also as to prior filings and proceedings before state and federal agencies.

The case is now before the court on the plaintiffs' motion for class certification and the defendants' motions to dismiss. Action on the plaintiffs' motion for preliminary relief has been stayed pending resolution of the foregoing motions and the plaintiffs' motion to compel discovery.

This action was commenced on November 24, 1975. On the defendants' motion, Dis-

trict Judge Harold P. Burke dismissed the case, holding that the complaint failed to state a cause of action and failed to name as defendants indispensable parties, that plaintiffs lacked standing to bring the suit, and that the action was barred by the statute of limitations. In an opinion dated December 27, 1976, the Second Circuit reversed and remanded to the district court for reconsideration with the following directions:

> We trust that the district court will make the necessary analysis regarding each plaintiff, each cause of action and each defendant, particularly on the various statutes of limitation issues and on the alleged failure to state a cause of action, and will afford us the benefit of a written opinion. We suggest also that plaintiffs be given an opportunity on remand to remedy difficulties the district court found with the complaint. For example, those parties the district court held indispensable can be named in an amended complaint and specific factual allegations can be added.

*Gill v. Monroe County Department of Social Services,* 547 F.2d 31 (2d Cir. 1976). The plaintiffs thereafter amended their complaint to add the state defendants, and the case was reassigned to my calendar. The state defendants then moved to dismiss, joining in the pending motion and raising additional grounds. On September 27, 1977, oral argument was heard on the motions along with the plaintiffs' motion for class certification. The issues have been exhaustively briefed and numerous affidavits have been filed. The court's decision on the motions is set forth in full below.

The plaintiffs consist of thirty-one black Americans, two Spanish-surnamed Americans, one American Indian, and two whites. Thirty are women, and six are men. With the exception of several plaintiffs who have resigned or retired and one rejected appli-

cant, the plaintiffs are currently employed by the Department in positions ranging from supervisors to field and clerical workers. They represent approximately twenty-four percent of the Department's black and Spanish-surnamed American work force of about one hundred twenty.[1] Detailed information concerning the plaintiffs' positions in the Department, their allegations of discrimination, and the ethnic composition of the Department is contained in Appendix A.

The Department determines eligibility for and provides public assistance to needy residents of Monroe County, New York. It is divided into nine separate divisions: administration, delivery, income maintenance, staff development and personnel, medical assistance, Title IV–D program, systems, children's center, and building services. Its nine hundred employees are members of the state and county civil service systems and are subject to civil service rules regarding appointment, promotion, transfer, reinstatement, and leaves of absence. Although the percentage of minorities employed by the Department exceeds the percentage in the county as a whole, minorities are heavily concentrated in the lower paying, nonsupervisory positions and in six of the nine divisions.[2]

The plaintiffs allege numerous types of discrimination affecting the terms and conditions of employment in the Department, but their primary complaint appears to be the procedures used to promote employees to higher paid positions. The alleged discrimination in promotion takes many forms, including use of discriminatory civil service tests, lack of job posting, use of provisional appointments favoring whites, and lack of objective systems for evaluating job performance. All of the plaintiffs claim that they have "sought and continue to seek advancement in [their] employment with defendants." Although some of the plain-

---

1. Defendant Monroe County Civil Service Commission's affidavit of August 2, 1977, Exhibit B. This report is dated April 1, 1977, and is the most current data supplied to the court.

2. As of April 1, 1977, all nineteen of the employees in the building services division were white, forty-eight out of fifty in the Title IV–D program division were white, and eighteen of twenty in the staff development and personnel division were white.

tiffs have succeeded in obtaining promotions, they contend that they would have advanced more rapidly and to higher positions had the defendants not discriminated against them.

In addition to discrimination in promotions, the complaint alleges other types of discrimination. Included are claims of unequal pay, retaliatory action, discriminatory demotions and layoffs, and discriminatory recruitment and hiring.

In August, 1973, twenty-one of the plaintiffs filed discrimination charges with the EEOC against the Department and the County Civil Service Commission. Another group of nine plaintiffs filed charges in January, 1974, incorporating the original charges filed the previous August.[3] On June 27, 1974, the EEOC found reasonable cause to believe that the defendants had been discriminating on the basis of race and national origin with respect to hiring, job assignments, promotions, and other terms and conditions of employment. Right-to-sue letters were issued to the charging individuals on October 10, 1975, and this action was commenced on November 27, 1975.

In September, 1973, plaintiffs Gill, Zieglar, and Fitzhugh also filed charges with the New York State Division on Human Rights. These charges apparently are still pending.

## I. PRELIMINARY MATTERS

■ Although the complaint contains general allegations of discrimination on the basis of sex as well as race and national origin, the allegations of the individual plaintiffs and the charges filed with the state and federal agencies do not explicitly refer to sex discrimination and cannot be construed to state a claim of sex discrimination. Nor does the class definition proposed by the plaintiffs include females who were

victims of sex discrimination. Having read all of the papers submitted by the parties and listened to oral argument, I am persuaded that this case involves discrimination on the basis of race and national origin but not on the basis of sex. Since allegations of sex discrimination were not raised before the EEOC, they are not properly before the court at this time. *See, e. g., Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (7th Cir.), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). Accordingly, all references to sex discrimination in the complaint shall be stricken.

Two of the plaintiffs, Gaffney and Cournoyer, are white. Ms. Cournoyer, in an affirmation dated March 8, 1976, has requested permission to withdraw from the case. Accordingly, her action is voluntarily discontinued without costs.

■ Ms. Gaffney does not allege that she was a direct victim of the discriminatory practices of the Department, but claims that she was denied the right to associate with and be supervised by minorities. She also claims that she was embarrassed by her favored treatment as a member of the majority race and was "injured by the reputation of defendants as employers who discriminate on the basis of race." I find that these claims do not state causes of action under the jurisdictional bases alleged and therefore dismiss plaintiff Gaffney from the suit.

## II. CLASS ACTION

■ Thirty of the plaintiffs have moved for class certification,[4] proposing the following definition of the class:

[All] minority persons who have been employed, are employed, might be employed, or have made application to be employed

---

**3.** Plaintiffs Zieglar and Hill filed separate charges in September, 1973 and February, 1974 respectively. No charges were processed by plaintiffs Martinez, Ware, Ferguson, and Johnson.

**4.** Plaintiffs Banks, Blackwell, Page, Ware, Rosie Lee Robinson, and McDonald do not seek

representative status. The Department urges the court to sever these plaintiffs from the main action under Rule 21. Since they have not requested exclusion from the class, however, there is no basis for severing their claims. They shall remain as named members of the class.

and who because of the illegal discriminatory practices alleged herein have been denied employment and/or advancement opportunity within the Monroe County Department of Social Services. The term "minority" includes all persons who are not of caucasian (white) race or of Anglo-Saxon national origin.

Complaint at 9.

The plaintiffs range in position from supervisors to clerical workers. *See* Appendix A. They allege as individuals a wide variety of discriminatory acts, which they claim are manifestations of a pervasive and continuing policy of discrimination against minorities. Class certification is appropriate, they argue, because all of the prerequisites of Rule 23 have been met.

The defendants oppose the motion on several grounds. First, they contend that the purported class is merely a collection of individual grievances presenting few if any common questions and many potential conflicts of interest. Second, they argue that the plaintiffs' claims are barred by the applicable statutes of limitation and the filing requirements and that therefore the moving plaintiffs cannot act as class representatives. These arguments and others will be addressed below.[5]

### A. RULE 23

■ The determination of whether an action should proceed as a class action is peculiarly within the discretion of the trial judge. *Becker v. Schenley Industries, Inc.,* 557 F.2d 346, 348 (2d Cir. 1977). To maintain a class action, the plaintiffs must show that the proposed class meets the four prerequisites of Rule 23(a), plus one of the three requirements of Rule 23(b). Each of these requirements shall be discussed separately.

### 1. COMMON QUESTIONS OF LAW OR FACT

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class. The defendants argue that the complaint is nothing more than a series of individual grievances joined together under the guise of a class action and that the individual facts relating solely to each plaintiff's particular claim are different. I refuse to adopt these arguments.

The plaintiffs make a sweeping attack on the Department's employment practices, alleging that it maintains an ongoing policy of race discrimination against all black and Spanish-surnamed American employees regardless of position. These general allegations are supported by statements from each of the plaintiffs detailing many separate instances in which this policy has manifested itself. The existence of such a policy, if proven, affects all members of the class equally and raises a sufficient number of common questions to satisfy the requirements of 23(a)(2). *Senter v. General Motors Co.,* 532 F.2d 511, 524 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Norwalk Core v. Norwalk Redevelopment Agency,* 395 F.2d 920, 937 (2d Cir. 1968).

■ I recognize that the facts surrounding each individual's claims are likely to be different, but such differences are inevitable in Title VII class actions. Each class member need not be in an identical situation so long as the complaint alleges an overriding policy or practice of discrimination. This general allegation functions as a unifying theme. *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 340 (10th Cir. 1975). In this context, it is helpful to recall the bifurcated burden of proof in Title VII class actions. Individual employees need not prove personal monetary loss until it is established that minority employees as a class have been discriminated against. *Baxter v.*

---

**5.** At oral argument, I dismissed from the bench the contention that the motion for certification was untimely. Although the plaintiffs' motion was not filed until March of 1977, this case has been vigorously litigated by all parties from its commencement. After the complaint was filed, the defendants immediately moved to dismiss, the motion was granted, and Judge Burke's decision was appealed to the Second Circuit. The plaintiffs filed their motion to certify the class shortly after the case was remanded and reassigned to my calendar.

*Savannah Sugar Refining Corp.,* 495 F.2d 437, 443–44 (5th Cir.), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974).

### 2. CLAIMS OR DEFENSES TYPICAL OF THE CLASS

 Rule 23(a)(3) requires the plaintiffs to show that their claims are typical of those of the class. This requirement is satisfied by a showing that all members of the class "will be helped if" the class representative establishes his or her claim. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968). The fact patterns underlying each class member's claim can vary provided that the members of the class have suffered the same or similar grievances. *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 270 (10th Cir. 1975).

 The defendants again raise factual differences among the various plaintiffs' claims and argue that these differences preclude a finding of typicality. What this argument overlooks, however, is that discrimination in promotion can be accomplished in a wide variety of ways. Viewed from a broader perspective, the individual claims all allege discrimination in promotion. All members of the class have undergone the same type of discrimination and will benefit by the class representatives proving their claims. I therefore conclude that the plaintiffs' claims are typical of those of the class.

### 3. FAIR AND ADEQUATE PROTECTION OF THE INTERESTS OF THE CLASS

 Adequacy of representation has traditionally been considered the most crucial requirement because any judgment entered in the case will bind absent class members. *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). The requirement has two ingredients:

[A]n essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class.

*Eisen v. Carlisle & Jacquelin, supra* at 562.

The qualifications of the plaintiffs' attorney are not seriously contested. Rather, the defendants focus on the second element and argue that the interests of the representatives are not coextensive with the interests of the class. For the purpose of demonstrating various conflicts between the plaintiffs' claims, they place the plaintiffs in numerous informal groupings:

For example, eight plaintiffs, Gill, Zieglar, Fitzhugh, Harris, Floyd, Allen, Fairwell and Sailes have all passed civil service tests in their various departments, have advanced, but no two of them are the same.

Ten more plaintiffs, Campbell, Dobson, Zealy, Hicks, Robinson, Martinez, Charles, Travis, Latham and Rutherford have failed civil service tests for the various jobs they seek. No two are the same.

Six more plaintiffs, Johnson, Williams, Fuentes, Silas, Weathers and Matthews will not take civil service tests. No two are the same.

Four plaintiffs, Holmes, Diggs, Ferguson and Morrison simply say they cannot advance.

Plaintiff Hill was never employed by the Department.

Plaintiff Gaffney is a white non-minority person who claims embarrassment. Affidavit of Frank P. Celona, dated August 4, 1977, at 6. *See also* Opposing Affirmation of Joseph C. Pilato, dated August 2, 1977, at 6–8. These groups, they contend, have antagonistic interests and seek conflicting remedies.

Many of the antagonistic interests identified by the defendants no longer pose difficulties because they pertain to claims of sex discrimination and of freedom of association, both of which have been eliminated from this action. Other conflicts have been resolved by placing unsuccessful applicants in a separate subclass as discussed below.

██ Two remaining issues, however, warrant discussion. First is the possibility that conflicts will arise among class members in the remedies they wish to pursue. The plaintiffs allege that they are career-oriented employees seeking advancement, and request various types of equitable relief in addition to back pay and damages. One of their demands is for retroactive seniority. Since the plaintiffs are employed on different levels throughout the Department, an award of this type could benefit some members of the class to the detriment of others. Members of the class who succeed in proving eligibility for retroactive seniority in a given department, for instance, may in future job bidding displace other members of the class who are not able to establish entitlement to retroactive seniority. Another illustration of possible conflicts over remedies is in the area of testing:

> [S]hould these plaintiffs succeed in overturning the basic qualifications or tests which they object to, what of those minority members still employed by the County of Monroe who have been fully qualified and have passed such requirements and in fact who are being promoted or are in line for promotion? These will be, in fact, foreclosed by the acts . . ..

Opposing Affirmation of Joseph C. Pilato, dated August 2, 1977, at 11.

██ These conflicts, however, do not defeat the plaintiffs' motion to proceed as a class. The courts have broad equitable powers in fashioning remedies, and these powers can be used to avoid such conflicts. *Sperry Rand Corp. v. Larson,* 554 F.2d 868, 874 (8th Cir. 1977). In addition, the courts can and often do bifurcate the questions of general equitable and individual relief in Title VII cases. *See, e. g., Harriss v. Pan American World Airways,* 74 F.R.D. 24, 37–38 (N.D.Cal.1977).

The second remaining conflict raised by the defendants concerns differences among the plaintiffs' claims. Although the plaintiffs universally attack the promotional scheme, their claims differ in the allegations of the means used in individual cases to discriminate. Civil service examinations constitute a major source of alleged discrimination, and are used at various job levels to determine eligibility for promotion. Other alleged means of discrimination in promotion include use of discriminatory educational prerequisites, denial of equal training and educational opportunities, use of subjective evaluation criteria, failure to post job openings, use of provisional appointments, and general preferences of whites over blacks. In many cases, the claims overlap. Some claims are shared by the entire class, and others pertain only to part of the class.

██ I recognize that some differences exist among the claims of the class members. However, the mere existence of intraclass antagonisms does not automatically defeat a motion to proceed as a class. The test for determining whether class differences jeopardize adequacy of representation under 23(a)(4) has been formulated as follows:

> If there are any intra-class differences which justify a court's refusal to hear a class action, . . . those differences must either derive from the fact that some class members have interests for which judicial awareness provides no protection, or which undermine so irreparably the integrity of class representatives that no adjustment of the litigative structure of the class suit can enable the trial judge to obtain a clear view of the class. Differences which do not raise questions as to the very legitimacy of the class action process, however, but merely reflect variances in view as to the proper outcome of a suit, do not provide reason for a court to refuse to hear a class suit. Such differences can be taken into account, and absentee interests thus fairly protected, in the course of the class action itself.

"Developments in the Law—Class Actions," 89 *Harv.L.Rev.* 1317, 1490 (1976).

██ Applying this test, I find that the intraclass differences do not justify refusing to proceed with a class action. This

case falls into the category of class actions in which "a single class opponent has committed a series of separate but fungible acts, each act giving rise to liability to a member or members of the class." 89 *Harv.L.Rev., supra* at 1461. Some antagonism is inevitable because the court is required to determine the culpability of a series of separate acts. Nevertheless, Title VII suits in this category are routinely treated as class actions. *Id.* at 1463. *See, e. g., Rich v. Martin Marietta Corp., supra* at 340; *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir. 1969), *rev'd on other grounds,* 488 F.2d 714 (5th Cir. 1974); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719–20 (7th Cir. 1969), *rev'd on other grounds,* 489 F.2d 896 (7th Cir. 1973). At this stage, judicial awareness of potential differences within the class affords sufficient protection to unrepresented class members. *See* 89 *Harv.L.Rev., supra* at 1490–92. If any biases in the advocacy of the representatives develop as the suit progresses, the court has at its disposal a number of procedures to remedy the situation. *Id.*

If the defendants' arguments were adopted, the plaintiffs would be forced to proceed separately with each of their numerous claims of discrimination in promotion. Such fragmentation would tend to defeat the purposes of class actions under Title VII by generating excessive legal fees, causing inefficient use of judicial resources, and creating the potential for inconsistent judgments and for adversely affecting the interests of nonparties. It would also violate the congressional intent underlying Title VII of eradicating employment discrimination by tending to minimize or ignore the claim of an ongoing policy and practice of race discrimination.

*Rich v. Martin Marietta Corp., supra,* provides a good illustration of how Rule 23(a)(4) applies in Title VII promotion cases. In that case, the plaintiffs sought to represent all female, black, and Spanish-surnamed American employees of a manufacturer in the aerospace industry. Some of the plaintiffs held salaried positions at professional or managerial levels. Others were hourly employees performing relatively menial tasks. Although the standards for promotion varied greatly depending on the position held, the Tenth Circuit found that the case should proceed as a class. The trial court had attempted to subclass the plaintiffs into four groups reflecting the occupations of the named plaintiffs, but then had found that the numerosity requirement was not met. Noting that the plaintiffs had made an "across the board" attack on the defendant's promotion policies throughout the plant, the court reversed the trial court action as too restrictive an interpretation of Rule 23.

*East Texas Motor Freight Systems v. Rodriguez* [ETMF], 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), is not inconsistent with the court's decision to allow the action to proceed as a class. ETMF involved an attack by black and Mexican-American city drivers on a trucking company's departmental seniority system and no-transfer rule. Although the complaint alleged a class consisting of all black and Mexican-American city drivers covered by the collective bargaining agreement, the plaintiffs never moved for class certification. After a two-day hearing, the district judge dismissed the action because he found that none of the plaintiffs were qualified to be line drivers. On appeal, the Fifth Circuit reversed the court's findings on the merits and certified the class on its own motion.

The Supreme Court, reversing the class determination, found that the plaintiffs were not members of the class they purported to represent because they were not qualified to be line drivers and therefore suffered no injury as a result of the discrimination:

> [T]he trial court proceedings made clear that [the class representatives] were not members of the class of discriminatees they purported to represent. As this Court has repeatedly held, a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members. . . The District Court found upon abundant

evidence that these plaintiffs lacked the qualifications to be hired as line drivers. Thus, they could have suffered no injury as a result of the alleged discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury. 431 U.S. at 403–04, 97 S.Ct. at 1896–1897 (citations and footnotes omitted). The Court also noted that the plaintiffs' failure to move for class certification called into question the adequacy of their representation. *Id.* at 404–05, 97 S.Ct. 1891.

Although *ETMF* would appear to cut back on the view that class representatives can assert class claims only tenuously related to their own (*see, e. g., Johnson v. Georgia Highway Express, Inc., supra*), the Court was careful to point out that a different case would be presented where a class is certified at the inception of an action before trial of the individual claims, and it later develops that the class representatives are not class members or are otherwise inappropriate class representatives:

> Obviously, a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives. In such a case, the class claims would have already been tried, and, provided the initial certification was proper and decertification not appropriate, the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the named plaintiffs' individual claims.

431 U.S. at 406, n. 12, 97 S.Ct. at 1898.

 In this case, the class representatives' individual claims have not been tried and found groundless. Each plaintiff seeking representative status alleges injury in fact. Although the specific claims of the representative plaintiffs are not in all cases shared by the class they desire to represent, they are sufficiently similar to allow the class action to proceed. They are united by the common claim of discrimination in promotion.[6]

### 4. NUMEROSITY

 Under the numerosity requirement of Rule 23(a)(1), the test is whether joinder is impracticable. The defendants contend that the close proximity in which the class members work makes joinder practicable. However, the most current employment figures supplied by the defendants indicate that the Department has approximately one hundred twenty black and Spanish-surnamed American employees. Past employees (within the time limits discussed below) and prospective employees must be added to this group. I conclude that this class easily meets the numerosity requirement. *See Korn v. Franchard Corp.,* 456 F.2d 1206, 1209 (2d Cir. 1972) (district court reversed for declining to certify class of seventy).

### 5. GROUNDS GENERALLY APPLICABLE TO CLASS

 In addition to the four prerequisites of Rule 23(a), the proposed class must satisfy one of the three subparagraphs of 23(b). The plaintiffs' position is that this action may be maintained under 23(b)(2), which applies where the defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

I find that this action meets the requirements of (b)(2). The grounds generally applicable to the class consist of the alleged policies and practices of discrimination against minorities. Since the plaintiffs seek to end discrimination on the basis of their common class characteristic, they are seeking relief "with respect to the class as a whole."

---

**6.** Such derivative claims as unequal pay, retaliatory action, and discriminatory demotions and layoffs are within the scope of the allegations of discrimination in promotion and shall be included as class claims.

It is well settled that Title VII cases can be maintained under (b)(2), even where the plaintiffs seek monetary damages or backpay. *See, e. g., Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 250–51 (3d Cir. 1975). Title VII suits are essentially equitable in nature (*Franks v. Bowman Transportation Co.,* 424 U.S. 747, 763–66, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976)), and cannot be characterized as exclusively or predominately money actions. *Wetzel v. Liberty Mutual Insurance Co., supra*; Advisory Committee's Notes on Proposed Amendments to Rules of Civil Procedure, 39 F.R.D. 69, 102 (1966). Treatment of the class under (b)(3) is not appropriate, and therefore the defendants' demand that (b)(3) notice be distributed to the class is without merit.

### 6. SUBCLASS OF APPLICANTS

Plaintiff Hill's claims of hiring discrimination present different questions of law and fact than the claims of the rest of the plaintiffs. In addition, the interests of applicants and actual employees are different enough to require two subclasses in order to satisfy 23(a)(4). *See, e. g., EEOC v. Detroit Edison Co.,* 515 F.2d 301, 311 (6th Cir. 1975), *vacated on other grounds,* 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977). Accordingly, I find that a separate subclass should be created, to be represented by Hill, for minority applicants who were denied employment opportunities with the Department. The same time restrictions discussed below apply to this subclass. As a result, Hill's claim based on the first of two applications is time-barred because the events occurred in 1970.

Once applicants are placed in a separate class, the requirements of Rule 23 are met. The common question is whether the Department has engaged in a practice of discriminating against minority applicants, and plaintiff Hill's claim appears to be typical of other applicants. There is no reason to believe that Hill will not fairly and adequately represent the class, and final injunctive relief is appropriate for the class as a whole. Since the class of rejected applicants is likely to be difficult to identify, joinder of all members is impracticable. Although the record does not reflect the number of applications received from minorities since November of 1972, the labor pool from which the Department draws its employees is sufficiently large to warrant the assumption that the class contains numerous members.[7] The class representative, Hill, is directed to obtain separate legal representation.

### 7. NUMBER OF REPRESENTATIVES

One final matter to be addressed is the number of class representatives. Thirty individuals joined in the application for class certification. With the dismissal of Gaffney's claim and the subclassing of Hill's, twenty-eight remain. If all of these individuals act as class representatives, the prosecution of this action will be unnecessarily complicated and delayed. On the other hand, in light of the asymmetrical nature of the class, adequate representation will best be ensured if there is one representative for each fractional claim involved. If, for instance, the class representatives include one who failed a civil service exam and another who seeks to benefit from a high score, the court will be in a position to guard against intraclass antagonism. Accordingly, the plaintiffs are directed to select a smaller number to act as class representatives, with the remaining continuing as named members of the class but not as representatives.[8]

### B. DEFINING THE CLASS

Having found that a class action is proper, the next question is the definition of the class.

---

7. These determinations, however, are subject to reconsideration as additional information is discovered about the class.

8. In accordance with the time restrictions discussed in the following section, the representative plaintiffs if possible should be selected from the group of eighteen who filed in August, 1973.

### 1. TITLE VII FILING REQUIREMENTS

 As a prerequisite to maintaining a Title VII action in federal court, the complainant must file a charge of discrimination with the EEOC within three hundred days of the alleged discriminatory act. 42 U.S.C. § 2000e–5(e). Where the case is brought as a class action, the class may include individuals who have not filed charges with the EEOC as long as the class representative satisfies the filing requirements. *See, e. g., Bowe v. Colgate-Palmolive Co., supra* at 720–21; *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 499 (5th Cir. 1968). The filing of a class action complaint tolls the statute of limitations for all members of the asserted class. *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). However, the class representative can only represent individuals who could have filed timely EEOC charges at the time that the class representative filed an EEOC charge. *Wetzel v. Liberty Mutual Insurance Co., supra* at 246.

 Applying these rules in this case, I find that two restrictions must be placed on the plaintiffs' lawsuit. First, the definition of the class must be narrowed to exclude individuals who terminated their employment with the Department before October, 1972. Second, Title VII claims based on acts of alleged discrimination which occurred before October, 1972 must be stricken from the complaint as barred by the three hundred day time limit. The reasons for these restrictions are discussed in turn below.

Eighteen of the remaining plaintiffs seeking representative status filed EEOC charges in August, 1973.[9] Approximately

three hundred days prior to that time falls in October, 1972. Since any individual who terminated his or her employment with the Department before that time could not have filed timely EEOC charges in August of 1973, these past employees must be excluded from the class under *Wetzel.*

In addition, the only acts of the Department which can provide the basis for Title VII relief are those which occurred during or after October, 1972.[10] Many of the specific allegations in the complaint concern incidents which took place prior to that time. For instance, one of plaintiff Gill's allegations is that a white with a lower test score was promoted over him in 1971. Although evidence on this issue is admissible for the purpose of proving an ongoing pattern of discrimination, it cannot establish liability or provide the basis for relief. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

 The plaintiffs argue that none of their claims are time-barred because they have alleged a continuous policy of racial discrimination. Although they are correct in asserting that continuous violations of Title VII can be raised by any present minority employee who has been harmed as a result, the plaintiffs are incorrect in assuming that acts occurring before November, 1972, can give rise to current violations of Title VII. In *United Air Lines v. Evans, supra,* the Supreme Court rejected this form of reasoning:

> Respondent is correct in pointing out that the seniority system gives present effect to a past act of discrimination. But United was entitled to treat that past act as lawful after respondent failed

9. The four plaintiffs who did not file EEOC charges cannot represent the class. Plaintiff Sailes never received a right-to-sue letter and therefore is also barred from acting as a class representative. Although plaintiffs Zieglar, Hill, Holmes, Morrison, Robinson, Fuentes, Williams, and Allen also filed charges with EEOC and received right-to-sue letters, their filings occurred after the first group of eighteen filed in August, 1973. In order to give the plaintiffs the most generous cutoff date for

statute of limitations purposes, I shall limit my consideration of the class representatives to the eighteen who were the first to file charges.

10. Claims arising from acts occurring before March 24, 1972 are barred for the additional reason that states and their political subdivisions were not subject to Title VII liability prior to that time. Equal Employment Opportunity Act of 1972, P. L. No. 92–261, 86 Stat. 104.

to file a charge of discrimination within the 90 days then allowed by § 706(d). A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists.

(Emphasis in original).

The final contention raised by the defendants in relation to the filing requirements of Title VII is failure of the plaintiffs to exhaust state administrative remedies. Since plaintiffs Gill, Zieglar, and Fitzhugh are the only plaintiffs who filed with the state Human Rights Division, the defendants argue that the other plaintiffs are precluded from representing the class.

■ Prior to filing with the EEOC, Title VII contemplates deferral to state agencies having the power to grant relief from employment discrimination. Section 2000e–5(c) provides that in states where such state agencies exist, "no charge may be filed [with the EEOC] before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated . . . ." The purpose of this requirement is to give state agencies the first opportunity to consider discrimination complaints. *Love v. Pullman Co.*, 404 U.S. 522, 526, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

■ I find that the requirement of state filing was met in this case by all of the plaintiffs seeking representative status. The complaints filed by Gill, Fitzhugh, and Ziegler alleged continuous discrimination on a class-wide basis and were not limited to

isolated acts. Their complaints triggered a class-wide investigation, putting the defendants on notice of the nature of the complaints and giving the state agency an opportunity to resolve the dispute. The purpose of the statutory deferral requirement was met, and the defendants have not shown that they were prejudiced in any way by the failure of the other representative plaintiffs to file with the State Division.

The EEOC, in its determination of reasonable cause, stated that the charging parties had satisfied all of the filing and deferral requirements of Title VII:

The timeliness, deferral and all other jurisdictional requirements have been met. Charging Parties have filed verified complaints with the New York State Division of Human Rights and the matter is currently under investigation.

Under EEOC's regulations, a copy of a complaint filed prematurely with the EEOC is properly referred to the state agency, and the complaint itself is deemed to be filed after the sixty-day waiting period expires or the agency proceedings terminate, whichever occurs first. This procedure was upheld by the Supreme Court in *Love v. Pullman Co., supra*, over arguments that it did not satisfy the statutory requirements. Noting that the respondent had made no showing of prejudice, the Court found that the procedure fully complied with the intent of the Act because it gave the state agencies the first opportunity to consider discriminatory complaints and ensured expeditious filing of complaints. The Court stated:

To require a second "filing" by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality. Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers initiate the process.

*Supra* at 526–27, 92 S.Ct. at 619 (footnote omitted).

The record does not reflect whether EEOC followed its deferral practice in this case when it received the charges filed by the plaintiffs. Even if it did not, however, the agency found that the jurisdictional requirements were met. Given the circumstances of this case, I will defer to this finding.

Since the intent of Title VII is remedial, the courts in discussing the double filing requirement have found that the plaintiffs should not be held accountable "for a procedural prescience that would have made a Baron Parke happy or a Joseph Chitty proud." *Voutsis v. Union Carbide Corp.*, 452 F.2d 889, 892 (2d Cir. 1971). No purpose would be served by requiring additional state filings.

### 2. SECTIONS 1981 and 1983

■■■ The applicable statute of limitations period governing the plaintiffs' claims under 42 U.S.C. §§ 1981 and 1983 is the three-year period contained in NYCPLR § 214(2). *Goss v. Revlon, Inc.*, 548 F.2d 405, 407 (2d Cir. 1976) [§ 1981 claim]; *Ortiz v. LaVallee*, 442 F.2d 912, 914 (2d Cir. 1971) [§ 1983 claim]. Since the complaint was filed on November 24, 1975, the plaintiffs' claims under these provisions are limited to acts of discrimination occurring on or after November 24, 1972. Under the principles discussed above, events which occurred prior to that time are relevant only to proving a pattern of discrimination and cannot provide the basis for relief. *United Air Lines v. Evans, supra.* Former employees of the Department who terminated their employment before November 24, 1972, cannot qualify as class members because they could not have asserted their claims at the time that the complaint was filed. *Wetzel v. Liberty Mutual Insurance Co., supra.*[11]

For purposes of convenience and efficiency in handling the trial of this action, the cutoff date for both the Title VII claims and the §§ 1981 and 1983 claims shall be set at October 15, 1972. If at a later time it becomes necessary to fix more precise dates, the court shall do so.

The class, consisting of two subclasses, shall be defined as: (1) all past, present, and future minority employees, except those who terminated their employment before October 15, 1972, who because of illegal discriminatory practices have been denied advancement opportunities within the Monroe County Department of Social Services, and (2) all past, present, and future minority applicants, except those who applied before October 15, 1972, who because of illegal discriminatory practices have been denied employment opportunities within the Monroe County Department of Social Services. The term "minority" shall include all persons who are either black or Spanish-surnamed Americans.

■■■ I wish to emphasize that this definition is tentative and may be changed as the lawsuit progresses and a factual record is developed. *Harriss v. Pan American World Airways, Inc., supra* at 37–38. Since different considerations as to class treatment may arise in determining individual relief, this determination is made for the limited purposes of adjudicating liability and ruling on class-wide injunctive relief. Rule 23(c)(1), which provides that a class determination "may be altered or amended before the decision on the merits," authorizes this approach. *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 256–58 (5th Cir. 1974); *Harriss v. Pan American World Airways, Inc., supra.*

### III. STATE DEFENDANTS' MOTION TO DISMISS

In accordance with the Second Circuit's instructions, the plaintiffs were granted leave to amend the complaint to add four state defendants: the New York State De-

---

11. Since exhaustion of administrative remedies is not required in seeking relief under §§ 1981 and 1983, those plaintiffs moving for class representation who did not file EEOC charges (*see* note 6 *supra*) are not barred from acting as representatives with respect to these causes of action. *Goss v. Revlon, Inc., supra.* However, numerous potential class representatives who also can represent the class's Title VII claims already exist, and therefore there is no need to consider these individuals' applications for representative status at this time.

partment of Social Services and its Commissioner, Phillip L. Toia, and the New York State Department of Civil Service and its President, Ersa H. Porton. The state defendants move to dismiss the complaint under Rule 12(b)(6) on the grounds discussed below. The county defendants oppose the state's motion, arguing that the state defendants are fully responsible for the alleged discrimination. Since the court has considered affidavits submitted by the parties in connection with this motion, the motion shall be treated as one for summary judgment under Rule 56.

## A. TITLE VII

The state defendants argue that the plaintiffs cannot proceed against them under Title VII for essentially two reasons. First, plaintiffs' right-to-sue letters name only the county defendants as respondents. Second, the state defendants contend they are not employers or employment agencies within the meaning of Title VII as far as the plaintiffs are concerned.

Even before the appeal to the Second Circuit, the county defendants have taken the position that the state defendants are indispensable parties who must be joined in order to grant complete relief. They claim that the state Civil Service Department has exclusive control over employment decisions involving civil service examinations and that the state Social Services Department determines job qualifications and titles for the county department. In substance, the county alleges that the real employers and decision-makers are the state defendants, who designed the tests. The state in turn alleges that the county defendants are the employers and, as the user of the tests, are responsible for establishing their validity. Although the state provides certain services to the county and establishes minimum guidelines within which the county must operate, the state maintains that it does not dictate the Department's employment decisions.

■■■ The papers filed by the defendants reveal the existence of a genuine factual dispute as to the allocation of responsibility among the defendants for hiring and promoting Department employees. If in fact the county defendants are acting solely as agents of the state defendants, then the state defendants are employers within the meaning of Title VII. Even if the state defendants do not directly employ the plaintiffs, they are within the reach of Title VII if they control access to the plaintiffs' job market. *Sibley Memorial Hospital v. Wilson,* 160 U.S.App.D.C. 14, 18, 488 F.2d 1338, 1342 (1973); *Puntolillo v. New Hampshire Racing Commission,* 375 F.Supp. 1089, 1092 (D.N.H.1974). Since these questions can only be resolved after full development of the facts and law at trial, the state defendants' motion to dismiss on the ground that they are not the plaintiffs' employers must be denied.

■■■ I also find that the state defendants are proper parties even though they were not named as respondents before the EEOC. In requiring Title VII complaints to be filed first with the EEOC, Congress did not intend to limit the court's power to add necessary or desirable defendants. *Evans v. Sheraton Park Hotel,* 164 U.S.App.D.C. 86, 92, 503 F.2d 177, 183 (1974). It is unrealistic to expect Title VII complainants filing EEOC charges to anticipate all of the parties who may or should be involved in subsequent litigation. *Id.; see also Glus v. G. C. Murphy Co.,* 562 F.2d 880, 887–89 (3d Cir. 1977); *Grogg v. General Motors Corp.,* 72 F.R.D. 523, 533 (S.D.N.Y. 1976). For these reasons, a number of courts have allowed Title VII plaintiffs to join parties who were not charged before the EEOC. This approach is fully consistent with the Second Circuit's flexible stance in interpreting Title VII's procedural provisions. *See Egelston v. State University College at Geneseo,* 535 F.2d 752, 754–55 (2d Cir. 1976).

## B. §§ 1981 and 1983

The state defendants move to dismiss the §§ 1981 and 1983 claims against the state agencies on the grounds that they are not "persons" subject to suit under these provisions and they are immune under the elev-

enth amendment from private suits for money damages.

■■■■■ State agencies are subject to suits under both §§ 1981 and 1983. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Mahone v. Waddle,* 564 F.2d 1018 (3d Cir. 1977). The eleventh amendment, however, precludes an award of monetary relief against the state agencies and against the individual state defendants acting in their official capacities.

In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court held that a state is immune from actions for money damages absent an enabling statute. This ruling also applies to state agencies. *Id.* at 663, 94 S.Ct. 1347. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1975), did not change the general rule enunciated in *Edelman.* In that case, the Court found that the eleventh amendment did not bar a backpay award or an award of attorneys fees under Title VII. The decision was based on two factors: the special nature of Congress's enforcement power under § 5 of the fourteenth amendment, and the express authorization contained in 42 U.S.C. § 2000e–2(a) for federal courts to award money damages. 427 U.S. at 449 n.2, 452, 457, 96 S.Ct. 2666.

■■■■■ Section 1981 is not based on the fourteenth amendment but on the thirteenth, which does not contain the specific limitations on state sovereignty contained in the fourteenth. The rationale of *Fitzpatrick* is therefore inapplicable. *Gourdine v. Ellis,* 435 F.Supp. 882, 885–86 (D.S.C.1977). Section 1983 also is not within the rationale of *Fitzpatrick. Id.; Ahmad v. Burke,* 436 F.Supp. 1307, 1312 (E.D.Pa.1977); *Summers v. Civis,* 420 F.Supp. 993, 997 (W.D.Okl. 1976). Although the legislative history of § 1983, which was analyzed by the Supreme Court in *Monell,* may not reflect an intent by Congress to bar suits against governmental entities, Congress at no time enacted legislation expressly authorizing suits against the state as it did in the 1972 amendments to Title VII. For these reasons, the §§ 1981 and 1983 claims against the state agencies, insofar as they request monetary relief, should be dismissed.

The state defendants also contend that the complaint fails to state causes of action against the individual state defendants under §§ 1981 and 1983 because it does not allege personal wrongdoing on their part. The plaintiffs in response point to certain paragraphs of the complaint where such allegations are made.

An examination of the complaint reveals that the causes of action under §§ 1981 and 1983 are alleged in a general fashion against all of the defendants in ¶¶ 228–235 of the complaint. Details of each named plaintiff's complaints are contained in ¶¶ 65–223. In ¶¶ 46–64, general allegations of the various types of discrimination are made against all of the defendants. Finally, in ¶ 40–A, the complaint alleges that Commissioner Toia is responsible for establishing minimum qualifications and classifying positions for local Social Services Departments and that President Poston is responsible for carrying out the duties of the state Civil Service Department, which include establishing rules for evaluating, transferring, terminating, and promoting employees in the state's classified service.

■■■■■ Summary judgment or dismissal of a complaint must be used sparingly, especially in cases involving employment discrimination. *Eqelston v. State University College at Geneseo, supra.* The question is not whether the plaintiffs are likely to recover but whether they are entitled to offer evidence on their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed. 2d 90 (1974). Under these standards, the complaint is sufficient to survive the defendants' motion. The allegations contained in 40–A, when read in conjunction with the rest of the complaint, are sufficient to meet any requirement of alleging personal misconduct under §§ 1981 and 1983. *Cf. Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

**336**

## IV. COUNTY DEFENDANTS' MOTION TO DISMISS

In addition to the arguments addressed above concerning the applicable statutes of limitations and filing requirements, the county defendants raise several other grounds for dismissing the complaint, none of which require detailed treatment.

▪ The claim that the complaint lacks sufficient specificity to state a cause of action in employment discrimination is without merit. Although the complaint contains many generalized allegations which are of little assistance to the defendants and to the court in determining the scope and nature of this case, the complaint also contains very specific allegations of discrimination pertaining to each individual plaintiff. These are sufficient to state a cause of action.

The county defendants also claim that this case is a sham and that there are no genuine issues of fact to be tried. This argument also must be rejected. The defendants have not given the court any reason to believe that the plaintiffs' allegations were not made in good faith. EEOC's finding of reasonable cause supports the plaintiffs' claims and suggests that there are numerous issues of fact appropriate for trial.

▪ The county agencies argue that they are not persons and therefore are not subject to suit under 42 U.S.C. §§ 1981 and 1983. Under the Supreme Court's recent decision in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the county agencies are amenable to suit under § 1983. They also can be sued under § 1981. *Mahone v. Waddle, supra.* Accordingly, neither cause of action should be dismissed.

▪ Finally, the county agencies attack the standing of the plaintiffs. Plaintiffs Gaffney and Cournoyer have been dismissed, and therefore their standing is no longer relevant. All of the other plaintiffs have alleged injury in one form or another as a result of the Department's alleged discriminatory practices. These allegations of injury in fact are sufficient to give them standing to contest the various policies and practices. Whether these allegations can be proven at trial is irrelevant for purposes of the present motion.

The court has reviewed all of the other arguments raised by the defendants and finds them without merit.

Although the complaint asserts a cause of action directly under the fourteenth amendment, this claim has not been pressed by the plaintiffs or attacked by the defendants. Accordingly, I refuse to express an opinion on this claim at this time.

In summary, the plaintiffs' motion to proceed as a class is granted within the limitations discussed above. The plaintiffs are directed to select several appropriate class representatives and give notice of their selections to the court and the defendants by July 27, 1978.

The state defendants' motion to dismiss the §§ 1981 and 1983 claims against the state agencies and against Toia and Porton in their official capacities is granted insofar as the plaintiffs seek monetary relief, but denied insofar as they seek injunctive and declaratory relief. In all other respects, the defendants' motions are denied.

The parties are directed to meet with the court on July 27, 1978, to discuss the current status of any pending motions and to report on the progress of discovery. A trial date shall be set at that time.

So ordered.

# APPENDIX A

## CLAIMS AND ETHNIC CHARACTERISTICS OF NAMED PLAINTIFFS BY RANK

| TITLE | PAY GROUP(S) | NO. OF POSITIONS | ETHNIC GROUP | | | | NAMED PLAINTIFF, TITLE, ETHNIC GROUP, SEX, EDUCATION, EMPLOYMENT PERIOD, EMPLOYMENT HISTORY AND CLAIM(S) |
|---|---|---|---|---|---|---|---|
| | | | W[1] | B[2] | SS[3] | PCT.[4] | |
| Top management, attorneys, et al. | 18–27 | 17 | 16 | 1 | | 5.9% | |
| Administrative caseworker, certification supervisor, et al. | 17 | 11 | 10 | 1 | | 9.1% | GILL, provisional admin. caseworker; B; M; masters degree; 1959–. History: caseworker to sr. caseworker, supervisor, provisional admin. caseworker, supervisor, 1977; restored to present position, 1977; passed all advancement tests. Claims: (1) white person with lower test score promoted over him, 1971; (2) retaliatory denial of leave of absence; (3) discriminatory, temporary demotion in Jan., 1974. |
| Community service coordinator, et al. | 16 | 5 | 4 | 1 | | 20% | CAMPBELL, comm. serv. coordinator; B; M; masters degree; 1963–. History: caseworker, special caseworker to present position, 1975. Claims: race discrimination in (1) denial of educational benefits; (2) denial of equal position; (3) failure of discriminatory supervisors' test. |
| Casework supervisor, systems analyst, et al. | 14–15 | 32 | 29 | 3 | | 9.4% | FITZHUGH, casework supervisor; B; F; masters degree, 1948–1955, 1962–. History: caseworker, sr. caseworker to present position, 1966. Claims: (1) discriminatory actions delayed advancement despite complete success in promotional tests; (2) harassment and retaliation by supervisors because of race and sex. |
| | | | | | | | FLOYD, casework supervisor; B; F; college degrees; 1949–. History: caseworker, sr. caseworker to present position, 1975; passed advancement tests. Claims: (1) discriminatory education prerequisites delayed advancement; (2) harassment by superior because of race. |
| | | | | | | | HARRIS, casework supervisor; B; F; college degree; 1954–1958, 1964–. History: caseworker, sr. caseworker to present position, 1975; passed advancement tests. Claims: (1) discriminatory education prerequisites delayed advancement; (2) harassment by white co-workers. |
| Senior caseworker, supervising examiner, et al. | 12–13 | 78 | 73 | 5 | | 6.4% | ZIEGLAR, sr. caseworker; B; M; college degree; 1963–. History: work incentive coordinator, 1968; demoted to present position, 1971; passed test for former position. Claims: (1) discriminatory demotion in favor of white person with lesser qualifications; (2) harassment and retaliation because of race. |
| Caseworker, senior examiner, et al. | 11 | 188 | 170 | 16 | 2 | 9.6% | ALLEN, caseworker; B; F; college degree; 1958–. History: casework trainee to caseworker. Claims: (1) discriminatory appointment of white person to desired senior caseworker (home finding) position; (2) deterred from taking discriminatory sr. caseworker |

CLAIMS AND ETHNIC CHARACTERISTICS OF NAMED PLAINTIFFS BY RANK

| TITLE | PAY GROUP(S) | NO. OF POSITIONS | ETHNIC GROUP | | | | NAMED PLAINTIFF, TITLE, ETHNIC GROUP, SEX, EDUCATION, EMPLOYMENT PERIOD, EMPLOYMENT HISTORY AND CLAIM(S) |
|---|---|---|---|---|---|---|---|
| | | | W [1] | B [2] | SS [3] | PCT.[4] | |
| Caseworker, senior examiner, et al.—Cont'd | 11 | 188 | 170 | 16 | 2 | 9.6% | exam; (3) discriminatory performance evaluations. |
| | | | | | | | CHARLES, caseworker; B; F; 1956– . History: caseworker, provisional supervising examiner; demoted to caseworker; failed supervising examiner's test. Claim: (1) discriminatory testing. |
| | | | | | | | DOBSON, caseworker; B; F; college degree; 1958– . History: caseworker, provisional sr. caseworker, 1975; demoted to caseworker, 1977; failed sr. caseworker test. Claims: (1) discriminatory denial of advancement; (2) discriminatory demotion. |
| | | | | | | | FAIRWELL, caseworker; B; F; two years of college; 1969– . History: caseaide to caseworker, 1976; passed caseworker exam. Claims: (1) denial of equal education benefits; (2) discriminatory job prerequisites delayed advancement. |
| | | | | | | | HICKS, caseworker; B; F; college degree; 1958– . History: intermittent caseworker only. Claims: (1) discriminatory denial of transfer to suburban area; (2) deterred from taking discriminatory sr. caseworker test. |
| | | | | | | | RUTHERFORD, resigned caseworker; B; F; college degree; 1960–1975. History: caseworker, asst. team manager, 1970; caseworker; failed test for sr. caseworker, 1971. Claim: (1) discriminatory testing. |
| | | | | | | | ZEALY, caseworker; B; F; college degree; 1960– . History: caseworker, provisional sr. caseworker, 1975; demoted to caseworker; failed sr. caseworker test. Claims: (1) discriminatory testing; (2) discriminatory denial of opportunities for development, viz. excluded from 1974 foster care conference. |
| Senior clerical workers, child care workers. | 7–10 | 95 | 81 | 12 | 2 | 14.7% | |
| Examiners | 9 | 170 | 146 | 17 | 7 | 14.1% | HOLMES, G., examiner; American Indian; M; masters degree; 1969– . History: caseaide to examiner. Claims: (1) discriminatory denial of educational leave with pay, 1971, 1975; (2) discriminatory denial of appointment to desired position—awarded to white person, 1974. |
| | | | | | | | MARTINEZ, bilingual examiner; S.S.; F; associate degree; 1970– . History: provisional casework technician (now entitled examiner); demoted to caseaide, provisional examiner trainee, 1972, to present position, 1973; failed casework tech., examiner tests; passed bilingual examiner test. Claims: (1) discrimina- |

CLAIMS AND ETHNIC CHARACTERISTICS OF NAMED PLAINTIFFS BY RANK

| TITLE | PAY GROUP(S) | NO. OF POSITIONS | ETHNIC GROUP | | | | NAMED PLAINTIFF, TITLE, ETHNIC GROUP, SEX, EDUCATION, EMPLOYMENT PERIOD, EMPLOYMENT HISTORY AND CLAIM(S) |
|---|---|---|---|---|---|---|---|
| | | | W [1] | B [2] | SS [3] | PCT. [4] | |
| Examiners—Cont'd | 9 | 170 | 146 | 17 | 7 | 14.1% | tory testing; (2) discriminatory denial of appointment; desired position awarded to less qualified white male; (3) segregated working conditions, lack of attention from supervisors. |
| | | | | | | | SAILES, examiner; B; F; two years of college; 1969– . History: homemaker to present position, 1971; passed examiner, sr. examiner tests; failed caseworker test. Claims: (1) discriminatory testing; (2) discriminatory denial of promotion to sr. examiner; (3) works in racist atmosphere. |
| Neighborhood representative | 8 | 1 | | | 1 | 100% | ROBINSON, provisional neighborhood representative; B; M; college degree; 1971– . History: housing coordinator, demoted to provisional housing technician, 1972, to present position; failed housing tech. test twice. Claims: (1) discriminatory testing; (2) denial of appointments to desired positions awarded to less qualified white people. |
| Caseaide, homemaker | 4, 6 | 37 | 6 | 26 | 5 | 83.8% | BANKS, homemaker; does not seek representative status. |
| | | | | | | | BLACKWELL, caseaide; does not seek representative status. |
| | | | | | | | DIGGS, resigned caseaide; B; F; 1969–? History: caseaide only; transferred to county mental health dept. Claim: (1) discriminatory denial of educational benefits and advancement. |
| | | | | | | | FERGUSON, caseaide; B; F; 1971–?. History: caseaide only. Claim: (1) discriminatory denial of equal education, advancement opportunities. |
| | | | | | | | FUENTES, caseaide; SS; F; 1971–1972; 1972– . History: homemaker, 1971; resigned, 1972; rehired as caseaide, 1972. Claims: (1) denial of equal rehire status; (2) denial of equal consideration for transfer, promotion. |
| | | | | | | | JOHNSON, homemaker; B; F; 1971– . History: homemaker only, failed examiner test, 1976; laid off, 1977. Claims: (1) discriminatory denial of training, education and advancement opportunities; (2) discriminatory layoff; (3) discriminatory testing. |
| | | | | | | | LATHAM, caseaide; B; F; 1969– . History: two years of college; caseaide only; failed examiner test, 1976. Claims: (1) denial of equal opportunity to pursue college education; (2) discriminatory testing. |
| | | | | | | | MATTHEWS, homemaker; B; F; 1970– . History: homemaker only; failed examiner test, 1976. Claims: (1) deterred from taking discriminatory advancement tests; (2) predominately mi- |

CLAIMS AND ETHNIC CHARACTERISTICS OF NAMED PLAINTIFFS BY RANK

| TITLE | PAY GROUP(S) | NO. OF POSITIONS | ETHNIC GROUP | | | | NAMED PLAINTIFF, TITLE, ETHNIC GROUP, SEX, EDUCATION, EMPLOYMENT PERIOD, EMPLOYMENT HISTORY AND CLAIM(S) |
|---|---|---|---|---|---|---|---|
| | | | W[1] | B[2] | SS[3] | PCT.[4] | |
| Caseaide, homemaker—Cont'd | 4, 6 | 37 | 6 | 26 | 5 | 83.8% | nority homemaker class denied equal opportunity to advance. |
| | | | | | | | McDONALD, resigned homemaker; 1970–1975; does not seek representative status. |
| | | | | | | | MORRISON, resigned caseaide; B; M; 1971–1976. History: file clerk to caseaide, 1972. Claim: (1) discriminatory denial of equal work experience, opportunity for transfer and promotion. |
| | | | | | | | PAGE, caseaide; does not seek representative status. |
| | | | | | | | SILAS, retired homemaker; B; F; 1966–?. History: homemaker only. Claim: (1) deterred from taking discriminatory advancement tests. |
| | | | | | | | WARE, caseaide; does not seek representative status. |
| | | | | | | | WEATHERS, caseaide; B; F; 1969– . History: caseaide only; failed examiner test, 1976. Claim: (1) denial of equal training, advancement opportunity. |
| | | | | | | | WILLIAMS, caseaide; B; F; 1969– . History: caseaide only. Claims: (1) discriminatory denial of equal educational leave with pay; (2) discriminatory denial of promotion to caseworker, viz. a white caseaide was advanced to caseworker without meeting prerequisites for position; (3) discriminatory lack of access to information concerning advancement opportunity. |
| Junior clerical workers, et al. | 2–6 | 211 | 193 | 15 | 3 | 8.5% | TRAVIS, clerk–3; B; F; 1967– . History: clerk–3 only; failed clerk–2 test. Claims: (1) discriminatory testing; (2) denial of equal training opportunities; (3) discriminatory denial of opportunity to apply for examiner test. |
| Rejected applicant | | | | | | | HILL, rejected applicant for caseworker position; B; F; college degree. History: applied and rejected, 1970, 1974. Claim: (1) discriminatory denial of application for caseworker position. |

FOOTNOTES

[1] "W" — number of positions filled by white employees.

[2] "B" — number of positions filled by black employees.

[3] "SS" — number of positions filled by Spanish-surnamed employees.

[4] "PCT." = percentage obtained by dividing the total number of positions in each category of pay group(s) into the number of positions held by black, Spanish-surnamed and American Indian employees.

SOURCE OF INFORMATION: DEFENDANT'S AFFIRMATION OF AUGUST 2, 1977, EX "B", SURVEY OF MINORITY EMPLOYMENT STATISTICS, DEPARTMENT OF SOCIAL SERVICES (APRIL 1, 1977); PLAINTIFF'S COMPLAINT AND MOVING PAPERS.